IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CENTER FOR BIOLOGICAL DIVERSITY;

Plaintiff,

v.

U.S. FOREST SERVICE; BROOKE
ROLLINS, in her official capacity;
REBECCA BROOKE, in her official
capacity,

Defendants,

DOUGLAS COUNTY, OREGON;
COOS COUNTY, OREGON;
SAVE THE RIDERS DUNES, INC.,

Intervenor Defendants.

**OPINION & ORDER**

Civ. No. 6:24-cv-00930-AA

AIKEN, District Judge.

Before the Court is Plaintiff Center for Biological Diversity's Motion to Supplement the Administrative Record, ECF No. 51, in its suit against Defendants United States Forest Service, Brooke Rollins, and Rebecca Brooke (collectively, "USFS" or "Forest Service") for alleged violations of the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), National Forest Management Act ("NFMA"), and Administrative Procedure Act ("APA"). For the reasons explained below, Plaintiff's Motion, ECF No. 51, is GRANTED.

Page 1 – OPINION AND ORDER

## BACKGROUND

On June 11, 2024, Plaintiff sued Defendants for failing to comply with applicable law by expanding off-highway vehicle ("OHV") activity and by issuing special use permits ("SUPs") for large OHV events in the Oregon Dunes National Recreation Area ("Oregon Dunes" or "Dunes")—designated critical habitat of the coastal marten. *See* Compl., ECF No. 1.

The coastal marten, *Martes caurina*, is a cat-sized carnivore in the Mustelidae family that lives on the Oregon Dunes. *Id.* ¶ 52. The coastal marten was thought to be extinct until it was "rediscovered in the 1990s in northern California, with a smaller population discovered later in the Oregon Dunes." *Id.* In 2020, the coastal marten was listed under the ESA as a threatened species. *Id.* ¶ 53. In 2020, total marten population was estimated at less than 400 coastal martens, including two remote and isolated populations on the Dunes. *Id.* "As of March 2020, the coastal marten population on the Oregon Dunes was estimated at 71 individuals across two subpopulations—42 martens north of the Umpqua River and 29 martens south of it— if all available habitat is able to be occupied." *Id.* ¶ 60.

On May 29, 2024, the U.S. Fish & Wildlife Service ("FWS") designated approximately 1.2 million acres of critical habitat for the marten, including 28,843 acres of the Oregon Dunes National Recreation Area—nearly the entire Oregon Dunes. *Id.* ¶ 62.

I.    *10(C) Project*

The Forest Service's 10(C) Project was implemented in 2015—before the marten's listing and critical habitat designation. *Id.* ¶¶ 70–75. The 10(C) Project expanded OHV activity in the Dunes by designating additional OHV routes and redesignating areas from restricted OHV riding to open OHV riding. *Id.* A prior 2015 Biological Opinion ("BiOp") for the 10(C) Project addressed OHV impacts to the western snowy plover—another ESA listed species with designated critical habitat on the Dunes—but the BiOp did not address OHV impacts to coastal martens. *Id.* ¶¶ 74–76. Plaintiff alleges that the 2020 marten listing triggered an ESA Section 7(a)(2) requirement to reinitiate consultation with FWS to ensure that the 10(C) Project does not jeopardize the marten's existence or adversely modify [its] critical habitat. *Id.* ¶¶ 76, 117–119 (citing 16 U.S.C. § 1536(a)(2); 50 CFR § 402.16).   Plaintiff alleges that USFS failed to comply with the ESA consultation requirement. *Id.* ¶ 118.

II.    *Special Use Permitting of Large OHV Events*

Plaintiff alleges that for over a decade, the Forest Service has been issuing special use permits ("SUPs") for large OHV events in the Dunes (such as DuneFest and UTV Takeover), events that are attended by thousands of riders. *Id.* ¶¶ 120–23. Plaintiff alleges that USFS failed to comply with the ESA Section 7(2)(a) consultation requirement as to the permitting of these large OHV events. *Id.* ¶¶ 120–26 (citing 16 U.S.C. § 1536(a)(2); 50 CFR § 402.14).

Plaintiff also alleges that by issuing SUPs for large OHV events before completing consultation, USFS irreversibly or irretrievably commits resources to the

project and forecloses reasonable and prudent alternative measures in violation of ESA Section 7(d). *Id.* ¶¶ 130–36 (citing 16 U.S.C. § 1536(d); 50 CFR § 402.09).

Plaintiff alleges that USFS violates NEPA and APA because it has not prepared an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") to analyze impacts from issuance of special use permits for large OHV events. *Id.* ¶¶ 137–150 (citing 42 U.S.C. § 4332(2); 40 CFR §§ 1501.3(a)(2)–(3), 1508.1; 5 U.S.C. §§ 706(2)(A), 706(1)).

Finally, Plaintiff alleges that USFS violates NFMA because the issuance of special permits for large OHV events on the Dunes violates both the Siuslaw Forest Plan and the Oregon Dunes Plan. *Id.* ¶¶ 152–160 (citing 16 U.S.C. § 1604(i); 36 CFR § 219.15; 5 U.S.C. § 706(2)(A)).

On June 5, 2024, USFS prepared a Biological Evaluation for Categorical Exclusion and concluded that issuing an SUP for the 2024 UTV Takeover would have "no effect" on the coastal marten or its critical habitat and required no ESA consultation or further NEPA impact analysis. AR09443-45 (Biological Evaluation for Categorical Exclusion). USFS also issued a determination that OHV activity on the Dunes would not constitute an "irreversible or irretrievable commitment of resources." AR09465-92 (ESA Section 7(d) Determination).

## LEGAL STANDARD

ESA, NEPA, and NFMA claims are reviewed under the APA. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 581 F.3d 1063, 1070 (9th Cir. 2009); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011). In reviewing

claims under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). The APA provides that a "court shall review the whole record," 5 U.S.C. § 706(2), which includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (emphasis in original). "[A]n agency's statement of what is in the record is subject to a presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). But that presumption can be overcome with "clear evidence to the contrary." *Id.* "Motions to complete the Administrative Record may be granted where the agency fails to submit the 'whole record.'" *Ctr. for Env't Health v. Perdue*, No. 18-cv-01763-RS, 2019 WL 3852493, at *2 (N.D. Cal. May 6, 2019) (quoting 5 U.S.C. § 706).

## DISCUSSION

Plaintiff brings two ESA claims, one NEPA claim, and one NFMA claim against USFS for failing to comply with applicable law as to (1) Project 10(C), which expanded OHV use in the Dunes, and as to (2) its ongoing issuance of Special Use Permits for large OHV events in the Dunes.

Plaintiff moves to supplement the record with 39 documents that fall into two categories:

(1) FOIA Documents, Appendix A: 16 documents that USFS provided to Plaintiff through a Freedom of Information Act ("FOIA") request that USFS considered but which, Plaintiff alleges, were improperly excluded from the record. Pl. Mot., Ex. 1, Appendix A, ECF No. 51-1; DiBenedetto Decl. ¶¶ 4–19, Exs. 1–16, ECF Nos. 52-1 through 52-16.

(2) Correspondence Documents, Appendix B: 23 documents that Plaintiff supplied to USFS in correspondence before it filed suit but that USFS declined to consider. Pl. Mot., Ex. 2, Appendix B, ECF No. 51-2; DiBenedetto Decl. ¶¶ 20–42, Exs. 17–39, ECF Nos. 52-17 through 52-39.

USFS maintains that it "previously agreed to include two of [the FOIA Documents, Appendix A] in the administrative record[.]" Def. Resp. at 4, ECF No. 82 (citing Exs. 2 and 14, ECF Nos. 52-2, 52-14). That leaves 14 FOIA Documents and 23 Correspondence Documents that Plaintiff seeks to provide for the Court's review.

I.    *Plaintiff's ESA Claims are not limited to the Administrative Record*

Plaintiff's First and Second Claims are brought under the ESA's citizen suit provision. *See* 16 U.S.C. § 1540(g). Plaintiff alleges that USFS's Project 10(C) and its issuance of SUPs for large OHV events violate the ESA consultation requirement and the ESA prohibition on irretrievably committing resources to a project before completing consultation. *See* 16 U.S.C. § 1536(a)(2); 50 CFR § 402.16; 16 U.S.C. § 1536(d); 50 CFR § 402.09.

Plaintiff challenges the agency's finding that its permitting of large OHV events in the Dunes would have "no effect" on the marten or its critical habitat, AR09443-45 (Biological Evaluation for Categorical Exclusion). Plaintiff also challenges the agency's determination that OHV activity in the Dunes would not constitute an irreversible or irretrievable commitment of resources. AR09465-92 (ESA 7(d) Determination).

Plaintiff maintains that the Court's review of its ESA claims is "not limited to the administrative record" because those claims are brought under the ESA's citizen suit provision, not under the APA. Pl. Mot. at 7. Plaintiff thus contends that the Court may consider the FOIA Documents (Appendix A) and the Correspondence Documents (Appendix B) in reviewing its ESA claims. *Id.*

Under the ESA citizen-suit provision, any individual "may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1); *see also Bennett v. Spear*, 520 U.S. 154, 173 (1997). The citizen-suit provision "is a means by which private parties may enforce the substantive provisions of the ESA against" government agencies. *Bennett*, 520 U.S. at 173. Where a plaintiff's claim is available under the ESA, a court looks to the ESA and not to the APA. *Id.* at 164 (determining first whether citizen-suit provision of ESA applied and then applying APA to remaining ESA claims). But the ESA "contains no internal standard of review[.]" *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011). For that reason, the APA's arbitrary and capricious standard governs review of such claims. *Id.* (internal citation and quotation marks omitted) (citing 5 U.S.C. § 706).

However, as to the scope of review in ESA citizen suits, a court "may consider evidence outside the administrative record for the limited purposes of reviewing [a plaintiff's] ESA claim." *Id.* (citing *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1030,

Page 7 – OPINION AND ORDER

1034 (9th Cir. 2005)).  This is so because "the APA applies only where there is 'no other adequate remedy in a court,'" *id.* (quoting APA, 5 U.S.C. § 704),  and "because the ESA provides a citizen suit remedy—the APA does not apply in such actions[,]" *id.*; *see also Nw. Env't Advocs. v. United States Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *14 (D. Or. Dec. 20, 2019) (explaining that the ESA citizen suit is "a wholly different type of action than [suits] posing a challenge to administrative decision-making"); *Native Fish Soc'y v. Nat. Marine Fisheries Servs.*, 992 F. Supp.2d 1095, 1106 (D. Or. 2014) (a claim under the ESA citizen-suit provision "is evaluated with any admissible evidence and is not limited to the administrative record"); *Nw. Env't Advocs. v. United States Nat'l Marine Fisheries Serv.*, No. 3:21-cv-01591-AB, 2025 WL 472332, at *7 (D. Or. Feb. 11, 2025) (a court may consider evidence outside the administrative record for the limited purpose of reviewing a plaintiff's Section 7 ESA citizen suit claim).

USFS contends that the documents Plaintiff seeks to admit are neither admissible nor relevant to its ESA claims.  Def. Resp. at 15–16.  Intervenor Defendants contend that "[n]early every document" that Plaintiff seeks to admit—agency staff emails, meeting notes, social media posts, studies, news articles and webpages—is offered for the truth of the matter asserted and constitutes inadmissible hearsay under Federal Rule of Evidence 801.  Int. Def. Resp. at 4, ECF No. 81 (citing Fed. R. Evid. 801).

Plaintiff replies that the evidence it seeks to include is relevant to its ESA claims because the documents, received from USFS through FOIA, address impacts

to coastal martens from Project 10(C) and from its permitting of large OHV events in the Dunes and undermine the agency's finding that such events would have "no effect" on martens. Pl. Reply at 4, ECF No. 85 (citing AR09442-47).

Plaintiff also replies that the evidence it seeks to include is admissible. Pl. Reply at 5. Plaintiff identifies documents that it contends are subject to judicial notice "because they can be found on the Forest Service's website." *Id.* at 5–6 and n.3 (referencing Exs. 52-25, 52-35). Plaintiff also identifies documents that it contends contain statements by Forest Service employees as to matters in the scope of their employment that do not constitute hearsay under Fed. R. Evid. 801(d)(2)(D) (a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay). Pl. Reply at 6 (referencing exhibits 52-4, 52-5, 52-7, 52-8, 52-13, 52-15, 52-16, 52-25, 52-35). *See Gilmore v. Union Pac. R.R. Co.*, No. S 09-2180 KJM DAD, 2011 WL 3236060, *3 (C.D. Cal. July 26, 2011) (employee emails that concerned a matter within the scope of employment are admissible); *see also Coal. for a Sustainable Delta*, 812 F. Supp. 2d 1089, 1095 (E.D. Cal. 2011) (documents written by the agency, such as FAQs and guidance documents, are admissible because they are "official [agency] publication[s] concerning matters within [the agency's] scope of operations"). And Plaintiff identifies other documents that it alleges fall into the hearsay exception for Public Records, Fed. R. Evid. 803(8), a "matter observed while under a legal duty to report[.]" Pl. Reply at 6 (referencing exhibit 52-35). Plaintiff contends that public documents do not require a "foundation" because documents that fall under this exception "are

Page 9 – OPINION AND ORDER

presumed trustworthy, placing the burden of establishing untrustworthiness on the opponent of the evidence." *Id.* (quoting *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (internal citation and quotation marks omitted)).

The Court concludes that, as to Plaintiff's ESA claims, which are citizen suit claims, not APA claims, the Court may consider any admissible evidence for the limited purpose of reviewing Plaintiff's ESA claims. But at this point, it is premature to determine the admissibility of any specific evidence that Plaintiff seeks to admit.

II.    *Deliberative Documents*

In addition to its ESA claims, Plaintiff brings a NEPA and an NFMA claim. Plaintiff's Third Claim alleges that USFS violated NEPA by failing to prepare an EA or EIS to analyze impacts from issuance of SUPs for large OHV events in the Dunes. *See* 42 U.S.C. § 4332(2); 40 CFR §§ 1501.3(a)(2)–(3), 1508.1. Plaintiff's Fourth Claim alleges that USFS violated NFMA by expanding OHV activity in the Dunes and by issuing SUPs for large OHV events in the Dunes that do not comply with the governing Forest Plans. *See* 16 U.S.C. § 1604(i); 36 CFR § 219.15.

Plaintiff's NEPA and NFMA claims are reviewed under the APA. The APA provides that a "court shall review the whole record," 5 U.S.C. § 706(2), which includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (emphasis in original).

Plaintiff alleges that the record is incomplete because USFS improperly excluded 14 documents that it considered and that contain "highly probative factual

material" "pertaining to the permitting, impacts to wildlife, and agency analyses of OHV use on the Oregon Dunes." Pl. Resp. at 8 (citing Exs. 40, 41, FOIA Response Letters, ECF Nos. 40-52 and 41-52).

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson*, 885 F.2d at 555. Though an agency's statement of what constitutes the whole record is subject to a presumption of regularity, the presumption that the record is complete can be overcome with "clear evidence to the contrary." *Goffney*, 995 F.3d at 748. To meet the "clear evidence" bar, a plaintiff must (1) "identif[y] the allegedly omitted materials with sufficient specificity; and (2) identif[y] reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Ross*, No. 19-cv-03809-LHK (SVK), 2020 WL 511899, at *2 (N.D. Cal. Jan. 31, 2020). A plaintiff "need not show bad faith or improper motive to rebut the presumption." *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006).

Here, Plaintiff rebuts the presumption of regularity with clear evidence. Plaintiff identifies each document that was in the agency's possession and that was considered by the agency. *See* Ex. A, Appendix A, ECF No. 51-1; DiBenedetto Decl. ¶¶ 4–19, Exs. 1–16. Plaintiff identifies specific factual information in each document that is relevant to the litigation because it bears on impacts from USFS's expansion of OHV activity in the Dunes and its permitting of large OHV events there. *See* Pl. Reply at 9–11. That information includes USFS discussion of OHV baseline

Page 11 – OPINION AND ORDER

conditions in the Dunes, the changed nature of OHV equipment, impact of noise on humans as a reference point for noise impacts on wildlife, DuneFest's history of noncompliance with permit conditions, lack of noise enforcement in the Dunes, noise complaints from the community, unlawful intrusions of OHV's outside of designated riding areas, and proximity of marten habitat to UTV Takeover activities. *Id.*

USFS does not dispute that the documents were in its possession and that it considered the documents. Def. Resp. at 4–5. USFS contends that the documents were properly excluded from the record because they are deliberative process documents that are not part of the record. *Id.* Plaintiff replies that it does not seek inclusion of deliberative material; it seeks only the inclusion of factual material in the excluded documents. Pl. Mot. at 9. Plaintiff requests that USFS produce a privilege log of the 14 documents to help the Court determine whether the documents were properly excluded. *Id.* at 10–11.

A court "assess[es] the lawfulness of agency action based on the reasons offered by the agency." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1048, 220 L. Ed. 2d 380 (2025) (citing *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). "Deliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to that analysis." *Id.* (citing *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). The deliberative process privilege applies to "documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are

Page 12 – OPINION AND ORDER

formulated," but does not protect "[p]urely factual material." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "Because deliberative materials are 'not part of the administrative record to begin with,' they are 'not required to be placed on a privilege log.'" *Jeffries*, 99 F.4th at 445 (quoting *Oceana*, 920 F.3d at 865 (cleaned up)). "[W]hether materials are in fact deliberative is subject to judicial review, and in appropriate circumstances district courts may order a privilege log to aid in that analysis." *Id.*

USFS maintains that "because deliberative materials are not part of the administrative record to begin with," the Court should decline to require the production of a privilege log "absent a strong showing of bad faith or improper behavior." Def. Resp. at 7 (quoting *Jeffries*, 99 F.4th at 445). USFS also maintains that "a privilege log would serve no purpose here." *Id.*

Intervenor Defendants contend that the documents' factual material is so "interwoven" with the deliberative material it would not be possible to separate the two types of material. Int. Def. Resp. at 6 (quoting *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) ("Although the documents at issue include 'facts and evidence,' which are not protected by the deliberative process privilege, . . . that factual material is so interwoven with the deliberative material that it is not severable.")).

Plaintiff replies that USFS "can segregate '[f]actual portions' of these documents through redaction and should include relevant factual portions of the documents in the administrative record along with a privilege log, as the law

Page 13 – OPINION AND ORDER

requires." Pl. Reply at 9 (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1144 (9th Cir. 2008)). Plaintiff provides a sample privilege log that identifies the relevant factual material in each of the 14 documents at issue. *See* Pl. Reply at 9–11.

Though the *Jeffries* court held that a court may order a privilege log to help determine whether excluded materials "are in fact deliberative," *Jeffries*, 99 F.4th at 445, it declined to conduct "a detailed exploration of the precise circumstances" under which it would be appropriate to do so, *id.* at 445. The court noted, however, that the plaintiff in the *Jeffries* case "d[id] not assert any misconduct by the [agency], nor d[id] it contend that specific documents were improperly classified as deliberative." *Id.*

Here, in contrast, Plaintiff contends that the factual material in 14 specific agency documents is improperly classified as deliberative. And Plaintiff identifies the documents and the factual material within each document that is relevant to this litigation. The Court finds Plaintiff's sample privilege log persuasive and determines that such a log would help the Court determine "whether [excluded] materials are in fact deliberative[.]" *Jeffries*, 99 F.4th at 445. For these reasons, Forest Service is instructed to produce a privilege log of the 14 FOIA Documents in Appendix A and to disclose the factual portions of each document that address any of the issues that are relevant to this case including: OHV impacts on wildlife; baseline (pre-existing) OHV use in the Dunes and changes from baseline; trends in OHV use in the Dunes; OHV noncompliance with decibel limits or other noise regulations; lack of sound/noise enforcement in the Dunes; unlawful OHV intrusions in to closed areas (including

Page 14 – OPINION AND ORDER

during large OHV events); noncompliance with permit conditions, rules and regulations (including during large OHV events).

III.    *Exceptions to the Record Rule*

Plaintiff contends that the record should be supplemented with extra-record evidence to enable meaningful review of its claims.  Pl. Mot at 11.

The general rule that "courts reviewing an agency decision are limited to the administrative record" is subject to four "narrow exceptions." *Lands Council v. Powell*, 395 F.3d 1019, 1029–30 (9th Cir. 2005).  "In limited circumstances, district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith."  *Id.* at 1030 (internal citation and quotation marks omitted).  "It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

Plaintiff contends that the record should be supplemented with both the FOIA Documents (Appendix A), discussed above, and the Correspondence Documents (Appendix B) "because they are necessary for the Court's review."  Pl. Mot. at 11.

As to Appendix A (the 14 FOIA Documents), as explained above, the Court has instructed USFS to prepare a privilege log with the factual material contained in each of those documents. Any relevant non-privileged factual material considered by the agency will be added to the record.

As to Appendix B (the 23 Correspondence Documents), Plaintiff contends that most of the Appendix B documents are scientific studies that "supply analysis of impacts to wildlife and habitats from OHVs, how noise impacts mustelids like martens and other wildlife, and studies on behavior patterns of denning martens." Pl. Reply at 13 (citing Exs. 17–29, ECF Nos. 52-17 through 52-29). Plaintiff contends that it provided the studies to the agency in correspondence before it filed suit in June 2024 but that the agency declined to consider the documents. Pl. Mot. at 4, 6; DiBenedetto Decl. ¶ 45, Ex. 42 (Apr. 28, 2025 email from counsel for Federal Defendants), ECF No. 52-42. Plaintiff contends that the studies fall under the first and third record rule exceptions because they "are necessary for the Court to determine whether the agency considered relevant factors and adequately explained its decision[,]" *id.*, and they are "necessary to explain technical terms or complex subject matter[,]" Pl. Mot. at 13.

Plaintiff contends that Exhibits 30 through 34 contain materials that "describe the technical features of certain OHVs, such as 'paddle tires' and modified exhaust systems that exacerbate the vehicles' impacts on the coastal marten and its habitats." Pl. Mot. at 13 (citing Exs. 30, 32, ECF Nos. 52-30, 52-32); *see also* Ex. 2, Appendix B. Plaintiff contends that these materials are necessary for meaningful review because

they "explain technical terms or complex subject matter." *Id.* (quoting *Lands Council*, 395 F.3d at 1030).

USFS responds that the record rule exceptions are limited to "identify[ing] and plug[ging] holes in the administrative record," and "are narrowly construed and applied." Def. Resp. at 3 (quoting *Lands Council*, 395 F.3d at 1030). The agency contends that the consideration of extra-record evidence requires Plaintiff to "first show [that] the administrative record is inadequate to effectively review the challenged action." Def. Resp. at 9 (quoting *Nw. Env't Advocs.* 2019 WL 6977406, at *8); *see also Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) ("The plaintiff] has not met its heavy burden to show that the additional materials sought are necessary to adequately review the Forest Service's decision here. . . . [The plaintiff] has failed to show any . . . gaps or holes [in the record]."). USFS maintains that "Plaintiff has failed to show that the current record is inadequate." *Id.* USFS cites specific pages in the administrative record that address the factors raised by Plaintiff. *Id.* at 10 (citing AR06786-92; AR07529-55; AR07681-96; AR07996-97; AR09442-47; AR09465-92; AR09484-92 (anthropogenic noise); AR09488-92 (OHV intrusions into unpermitted areas)).

The Court has reviewed the record pages that USFS references and finds them inadequate. Four of the documents cited by USFS were prepared either before the coastal marten's listing or prior to its critical habitat designation. Three of those documents primarily analyze the Oregon Dunes Restoration Project and its impact on the western snowy plover—a different listed species with designated critical

habitat on the Dunes.  *See* AR06786-92 (2018); AR07529-55 (2020); AR07681-96 (2020).  The documents do not address OHV use or impacts at all.

The document at AR07996-97 is a public comment and response to FWS's 2020 ESA listing of the marten. The comment states that the "coastal martens co-exist with [OHV] activities [in the Dunes]" and that the "listing should not limit the ability to recreate in the area in designated riding routes."  FWS responds that because marten habitat "is mostly within forested areas not used by . . . OHV enthusiasts, . . . [FWS] did not identify OHV activities as a threat to the coastal marten."  AR07996-97.  The comment and response do not pertain to this litigation and were made before the marten's critical habitat designation.

The document at AR09442-47 is the agency's 2024 six-page Biological Evaluation for Categorical Exclusion that concludes that the UTV Takeover would have "no effect" on martens or their critical habitat.  The document contains no data or analysis and concludes that the OHV event would have no effect because the permitted "[a]ctivities would not introduce recreation into new areas nor damage or remove [the] vegetation" that is preferred marten habitat.  AR9443-47.

The document at AR09465-92 is the agency's 2024 determination that the 2020 Dunes Restoration Project and the 2015 10(C) Project comply with the ESA Section 7(d) command to refrain from irretrievably committing resources before completing consultation.  The document at AR09465-92 is an introduction with no consideration of factors or explanation.  Within that document, the record at AR09484-92 discusses "Off Highway Vehicle Animal Vehicle Collisions (AVCs)."  That cursory discussion

concludes that "[w]ithin OHV areas, no AVC records exist[,]" and declines to apply existing AVC data to Dunes areas impacted by OHV use, including areas that see heavy OHV use during events. Also within that document, the record from AR09486 through AR09488-92 discusses anthropogenic noise impacts on wildlife generally. The document concludes that "[r]esearch specific to marten response to OHV noise is limited[]" and that "[w]ithout specific studies investigating the impacts of OHV noise to martens, it remains speculative whether OHV noise does or does not appreciably affect the fitness of individual martens or marten population persistence." AR09487-92. Yet it declines to apply general research findings on noise impacts and wildlife to the question of OHV noise and martens. It does not address noise produced from intensive use events such as the permitted events which see thousands of riders. And it fails to analyze noise impacts to denning behavior and to kits and juveniles.

USFS contends that the record at AR09488-92 considers impacts to martens and their habitat from OHV intrusions into unpermitted areas. But the Court finds no such discussion there. From AR09488-92 through AR09490-92, the Court finds only general discussion about how OHV use in the Dunes has increased vegetation and concludes that OHV use has a beneficial impact on marten habitat—a conclusion that does not appear to be based on any data. There is no discussion on intrusions into unpermitted areas and no discussion as to impacts to denning behavior or to kits or juveniles from such intrusions.

Plaintiff has met its burden to show that the administrative record has holes that require plugging, that is, that Forest Service has not considered all the relevant factors and explained its "no effect" decision.

The Court has also reviewed Plaintiff's exhibits and determined that the "extra-record material sought by [Plaintiff] likely will provide relevant background information that will assist the Court in conducting the required [inquiry] and also may provide information necessary for the Court to determine whether the [agency] considered all relevant factors in reaching [its] decisions." *Audubon Soc'y of Portland v. U.S. Army Corps of Eng'rs*, No. 3:15-cv-0665-SI, 2015 WL 13649299, at *4 (D. Or. May 5, 2015). The Court has reviewed Exhibits 17–29, the scientific studies that Plaintiff provided to USFS, but that USFS declined to consider, and concludes that they are necessary to help the Court determine whether USFS has considered all relevant factors and has explained its "no effect" decision.[1] Exhibits 17–29 are thus admitted as extra-record evidence. The Court has also reviewed the materials in Exhibits 30 through 34 that explain OHV technical features including tires, exhaust systems, and fire dangers and concludes that such technical information will help the Court determine whether USFS considered all relevant factors. Exhibits 30 through 34 are admitted as extra-record evidence. The Court has reviewed Exhibits 36

---

[1] For example, Exhibit 17 examines noise impacts to mustelids; Exhibit 19 examines human disturbance impacts to European pine martens; Exhibit 20 examines critical sensitive periods for denning martens; Exhibit 25 examines impacts to wildlife from motorized recreational vehicles; Exhibit 26 examines anthropogenic noise impacts to mustelids; Exhibit 29 examines OHV impacts on martens. *See* Ex. 2, Appendix B, ECF No. 51-2.

through 38—photos that show vegetation damage caused by the permitted OHV activities in the Dunes—and concludes that the exhibits will help the Court determine whether USFS has considered all relevant factors and has explained its "no effect" decision.  Exhibits 36 through 38 are admitted as extra-record evidence. The Court has reviewed Exhibit 35, a 2021 USFS document that addresses FAQ's as to OHV noise limits proposed for the Dunes area of the Siuslaw National Forest. Exhibit 35 is admitted as extra-record evidence.

In sum, the review of Plaintiff's citizen suit ESA claims is not limited to the administrative record.  Accordingly, the Court may consider any admissible evidence for the limited purpose of reviewing Plaintiff's ESA claim.  As to all claims, USFS is instructed to provide a privilege log with the relevant factual material from the 14 FOIA Documents in Appendix A to help the Court determine whether the agency improperly excluded relevant factual material from the record.  Finally, the Court admits Exhibits 17–38 as extra-record evidence for the purpose of determining whether USFS considered all relevant factors and explained its "no effect" decision.

## CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiff's Motion to Supplement the Administrative Record, ECF No. 51.

It is so ORDERED and DATED this ___31st___ day of March 2026.


　　　　　　　　　/s/Ann Aiken_____
　　　　　　　　　ANN AIKEN
　　　　　　　　　United States District Judge


Page 21 – OPINION AND ORDER